*Wondrak* v. *Kelley* (1935), 129 Ohio St., 268; *Pritz* v. *Messer* (1925), 112 Ohio St., 628; *City of Youngstown* v. *Kahn Bros. Building Co.* (1925), 112 Ohio St., 654; *State, ex rel. Srigley,* v. *Woodworth* (1929), 33 Ohio App., 406; *Peebles* v. *State* (1937), 25 Ohio Law Abs., 545.

Accordingly, the board's disapproval of the issuance of a permit for aesthetic reasons alone is contrary to law and the claim of error is well taken.

For these reasons, it is my view that the judgment of the Court of Common Pleas should be reversed and the cause remanded with instructions to return the cause to the Board of Architectural Review of Cleveland Heights directing that body to approve the issuance of a building permit to appellant.

RINDLAUB, APPELLANT, *v.* THE TRAVELERS INSURANCE CO. ET AL., APPELLEES.*

*Judgment affirmed, 175 Ohio St., 303.

(No. 6854—Decided October 23, 1962.)

*Messrs. Key, Butler, Harrison & Carlisle,* for appellant.
*Messrs. Wright, Harlor, Morris, Arnold & Glander,* for appellee The Travelers Insurance Company.
*Messrs. Knepper, White, Richards, Miller & Roberts* and *Mr. John M. Adams,* for appellee Alice Patterson Rindlaub.

DUFFEY, P. J. This is an appeal on questions of law from a judgment of the Common Pleas Court awarding the proceeds of certain insurance policies to the defendant-appellee Alice Patterson Rindlaub. Appellant is the widow of the insured, Bruce Rindlaub. Appellee is the first wife of the deceased, having been divorced from him in 1946. After the insured's death, appellant commenced an action against the Travelers Insurance Company for the proceeds of the policies. The insurer filed an interpleader, deposited the money in court, and appellee was substituted as a party defendant. The case was submitted on the pleadings, stipulations and testimony.

The insured purchased two "old-line" policies in 1934. These were issued in California while he was in military service on assignment and married to appellee. She was designated as primary beneficiary and his daughter as secondary or contingent

beneficiary. She and the insured were divorced on June 4, 1946, effective December 4, 1946. On July 2, 1946, the insured was in Japan in military service. He sent a direction for change of beneficiary on each policy to the company. Except as to policy number and amount, these directions are identical and state:

"To Travelers Insurance Co., Hartford, Conn.—

"I, the undersigned insured, hereby cancel all previous designations of beneficiaries under the life insurance policy No. 6193EW32, issued by your company, which amounts to $5,000.00 and direct that it be paid from and after my death as follows:

"Principal: Miss Margaret Walker
372 Leith Street
Dunedin, New Zealand

"Contingent: Miss Cornelia D. Rindlaub
P. O. Box 193
Tulsa, Oklahoma

"Signed at APO 500, San Francisco, California, on this the 2d day of July, 1946.

| Signature of Insured | Bruce D. Rindlaub |
| | Bruce D. Rindlaub |
| | Colonel, CE |
| Address | OCE GHQ AFPAC |
| | APO 500, c/o PM. |
| | San Francisco, Calif. |

"Signature of witness
L. M. Etherton
Lt. Col. Inf

"Address OCE GHQ AFPAC
APO 500, c/o PM.
San Francisco, Calif."

The policies contained the following provision:

"Subject to the right of an assignee, if any, the Insured may at any time and from time to time during the continuance of this contract change the beneficiary, to take effect only when such change shall have been approved in writing by the Company, whereupon all rights of the former Beneficiary shall cease."

There is a photostatic copy of a carbon copy of a letter addressed to the insured and which states:

80

"July 16, 1946

"Colonel Bruce D. Rindlaub
OCE, GHQ, AFPAC
APO 500
San Francisco, Calif.

"Dear Sir:          Contracts 6193-EW-32, 6194-EW-32

"We have received your letter of July 2 accompanied by direction to pay the insurance under these contracts to Miss Margaret Walker, if living, otherwise to Miss Cornelia D. Rindlaub.

"We note Miss Cornelia D. Rindlaub is your daughter as previously designated, but the relationship of the newly proposed beneficiary, Miss Margaret Walker, is not given in your direction of July 2.

"As this contract was issued in California, it is subject to the community property laws of that state which give one's spouse a certain interest in all community property not removable except by release of the spouse unless by court action it has been disposed of in some other way.

"In order to enable us to give proper attention to your recent direction, will you please consider the foregoing and supply us with any information as to Alice P. Rindlaub's position in this matter whether any action has taken place to divest her of her interest, the relationship of the new payee and any other facts that would be important for the record.

"Very truly yours,

"Superintendent

"HRR:EM"

This photostatic copy was submitted to the court under a stipulation. The parties are in conflict as to the interpretation of that stipulation with reference to whether it establishes receipt of the letter by the insured. No other action by the insured or the insurer with reference to the policies appears of record until the death of the insured some thirteen years later in Columbus, Ohio. The insured married the appellant, Margaret Walker Rindlaub, in Japan on December 11, 1946.

In the trial court appellee claimed that the insured was domiciled in California at the time of issuance. Appellant's contention is that his domicile was in North Dakota, the insured's domicile at the time of his entry into service. The lower court did not pass on the question, finding it to be immaterial to the result it reached. Since neither party has pressed the matter in this court, we give no consideration to the possible effect of California law.

The general subject of provisions for change of beneficiary in "old-line" policies is extensively treated in 19 A. L. R. (2d), 5. Two principal Ohio cases are *Atkinson* v. *Metropolitan Life Ins. Co.* (1926), 114 Ohio St., 109, and *Stone* v. *Stephens* (1951), 155 Ohio St., 595. As noted in the annotation, there is a line of authority which purports to give literal effect to the provisions of the policy, and to require strict compliance. A larger body, and the majority of the more recent cases, hold that a change of beneficiary can be effected by substantial compliance—or stating it the other way, without strict compliance with the provisions of the policy. We agree with the author that the latter is the better view. The so-called "strict interpretation" view fails to take into account the nature of the contract and the limited commercial interest of the insurer in a change of the beneficiary. These factors go to the purpose and the function of the provision. In particular, they have bearing on the scope of the provisions which relate to the insurer.

In the *Atkinson case* the Supreme Court made it clear that it rejected the "strict interpretation" view. The policy there provided:

"This policy is written with the right of the insured to change the beneficiary. When such right has been reserved and if there be no written assignment of this policy on file with the company, the insured may (while the policy is in force) designate a new beneficiary, with or without reserving the right to change thereafter, by filing written notice thereof at the home office of the company, accompanied by the policy for suitable indorsement.

"Such change shall take effect on the indorsement of the same on the policy by the company and not before."

In that case the insured stated to an agent that he wished to make his wife the beneficiary. No written notice was ever

given the company, except for a letter from the agent requesting that the proper form of indorsement be prepared. This was prepared and sent to the insured but was never executed. No indorsement of the change was ever in fact placed on the policy. The court held that the policy conferred upon the insured an absolute right to change the beneficiary. The other provisions were held to be merely part of the regulation of the manner of exercising that right. In discussing fraternal and old-line policies, the court said, at page 120:

"* * * Old-line insurance, on the other hand, is on a strictly commercial basis, and the company has no interest in the policies, or in the beneficiaries, except in so far as conditions may be necessary to protect the company from loss or litigation. * * *"

It is apparent from the decision that the court considered the insurer's interest as limited to its commercial position, and the purpose of the provisions as designed for the protection of that interest only. It followed, therefore, that the only substantive right conferred by the provision was that of the insured to change the beneficiary. The balance of the provision was merely a regulation of the manner of exercising that right by the imposition of conditions. See *Atkinson* v. *Metropolitan Life Ins. Co.* (1926), 114 Ohio St., 109, paragraphs one, two, three and four of the syllabus.

Appellee contends that the present policy provides that a change be "approved," and that, therefore, *Atkinson* is distinguishable. There are cases which do make such a distinction. The author of the annotation considers this to rest on the "strict interpretation" approach. He points out that the majority of the more recent cases hold that a change can be effected without consent where all the other requirements as to the change have been substantially complied with. These cases hold that approval cannot be capriciously withheld, and the author considers this the better view. 19 A. L. R. (2d), at 15.

There is no authoritative Ohio decision dealing with an "approval" or "consent" provision as opposed to a "notice and indorsement" provision. However, the whole rationale of the *Atkinson case* is inconsistent with appellee's contention.

Under that case the provisions are not for the benefit of the beneficiary, but are, in both purpose and effect, merely conditions precedent to the insurer's obligation to pay the person designated by the insured. In view of the limited nature of the insurer's interest, "approval" would only be for the purpose of protecting the company from expense or loss. It, therefore, cannot be withheld capriciously, and in particular, the company can have no interest as such in the insured's choice of a beneficiary after the original issuance. We, therefore, hold that the provision here gave the substantive right to the insured to change the beneficiary. The other portions of the provision, including that of approval, are merely conditions as to the manner of exercising that right.

Upon a comparison of the facts here and the policy provision, it is apparent that, on the insured's part, he more than complied with everything required by the contract. There is nothing explicitly proscribed as to the manner or mode for the *insured* to effect a change. For his part, the insured was entitled to declare the change in any reasonably appropriate manner. 29A American Jurisprudence, 757, Insurance, Section 1678; 19 A. L. R. (2d), 11, note 5.

The manner used was a written instrument sent to the company's office, identifying the insured and the policy by number and amount. It unequivocally cancels the existing designation and *directs* a change. It identifies a person by name and address. The insured signed it and the signature is witnessed. It was received by the company. Obviously, this was an appropriate manner to exercise his right.

It should be noted here that in the *Atkinson* and *Stone cases* a principal issue was whether the *insured* had substantially complied with the requirements of the policy applicable to him. A large portion of the annotation in 19 A. L. R. (2d), 5, is also concerned with that issue. No such problem exists here. The issue is thus narrowed to the question of whether the *insurer's* failure to affirmatively approve the change of beneficiary as directed by the insured was essential to appellant's claim to the proceeds as against the original beneficiary, Alice Patterson Rindlaub.

Considering the nature of the condition of approval and its purpose, we believe that the company could not defeat the insured's right by simply failing to act. Where the insured has appropriately ordered the change, the company may prevent the change from being effective only if it has a sufficient reason related to its commercial interest, and has affirmatively invoked the condition. It is doubtful that the insurer here had in fact any sufficient basis to refuse approval. However, in any event, it did not affirmatively invoke the condition at any time prior to the maturity of its obligation. (Maturity in the present case occurred at death.) Its conduct was equivocal, neither approving nor rejecting. The fulfillment of the condition was, in our opinion, excused by the failure to assert it.

Appellee contends that the insured failed to respond to the company's request for information, and that this constituted a failure to do all that he could to effect the change. It is argued that this is a requirement of law. Further, appellee contends that it evidences an intent to abandon the direction for a change. The lower court so found. The contention presupposes two things (1) that the insured received the company's letter, and (2) that he had a duty to respond.

There is no evidence of the receipt of the letter by the insured, nor even of its mailing. Appellee's contention rests on a stipulation which she contends, and appellant denies, includes receipt. We find nothing in the pre-trial conference notes, nor in appellant's trial court brief, which indicates such an admission. The trial court assumed appellee's interpretation in its opinion. Ordinarily, an appellate court will respect a trial court's fair interpretation of a stipulation. In the present case there was no motion for a new trial. We find nothing which casts any light on whether the court was aware of the conflict between counsel as to the interpretation of the stipulation.

The stipulation deals with the use of photostatic copies. It provides they "may be offered in evidence by either party without objection in the same manner as if the originals were produced." However, unlike the other documents, the "original" in question here was a carbon copy. Under the best evidence rule, the carbon's admission would require more than

identification. In any event, the mere admission of the carbon would not be significant without evidence of the receipt of the actual letter. We do not believe that the wording of the stipulation can fairly be stretched to cover receipt, especially since we can find nothing indicating that appellant so considered it. We accept appellant's contention that on the record there is nothing to show receipt of the letter by the insured. Accordingly, there is insufficient evidence to support a finding of abandonment of the change.

However, it should be added that the proposition of doing all that can be done is properly an equitable principle utilized in some cases to effectuate a desired change where the insured has been unable to substantially comply with the policy provisions. 19 A. L. R. (2d), 34, Section 12. Since, in our view, the policy provisions were substantially fulfilled, it is unnecessary to rely upon this possible equitable doctrine. Further, we do not consider that the insured had an obligation to reply. He was required to choose an appropriate manner in exercising his right. He did so. It was then up to the company to invoke the condition.

Both parties have extensively discussed *Stone* v. *Stephens* (1951), 155 Ohio St., 595. In that case the insured included a provision in his will purporting to change the beneficiary. While the policy provision is not quoted, it clearly did not expressly provide for such a manner of change. It did require certain steps to be followed. On the facts, the insured had not complied with all the steps required of him by the policy. In the present case he had complied. The court in *Stone* was, therefore, concerned with the question of the extent to which Ohio law would recognize and give an effect to an intention to change beneficiary where there has been *no* substantial compliance. Further, the position of the majority turned on the peculiar nature of that particular attempted change. The right to make an uncommunicated change of beneficiary by a will provision presents distinct questions involving the nature of the interest and the effect of a will. In 19 A. L. R. (2d), 12, Section 2, this problem is set aside as involving distinct issues of its own. At no place in the decision or syllabus of *Stone* is there any indication that

the court intended to reject or modify the *Atkinson case* with respect to the nature and effect of change of beneficiary provisions in old-line policies.

In so far as the *Stone case* may be considered as impliedly rejecting interpleader, or other acts of the insurer after maturity, as a waiver of policy provisions, it is not relevant. The appellant's case rests on a substantial compliance by him, and excuse of condition by the company occurring prior to maturity.

Since we have concluded that the change of beneficiary was effective, it is also unnecessary to consider the legal effect, if any, of that portion of the insured's direction which canceled the previous designation.

The judgment of the Common Pleas Court is reversed, and judgment will be granted plaintiff-appellant on the petition and on the cross-petition. The case will be remanded to Common Pleas Court for further proceedings.

*Judgment reversed.*

BRYANT, J., concurs.
DUFFY, J., concurs in judgment of reversal.

DUFFY, J., concurring. I agree with the majority of the court that the judgment of the trial court should be reversed as I believe the letter of July 2, 1946, was effective to cancel the existing named beneficiaries.

In as much as the trial court did not decide her contention as to an interest in the policies by virtue of the California law, it should be returned to the trial court for further proceedings.