Mary F. **DUNBAR**

v.

The **UNION CENTRAL LIFE INSUR-ANCE COMPANY.**

No. IP 67–C–8.

United States District Court
S. D. Indiana,
Indianapolis Division.

May 3, 1968.

13. 1 U.S.Cong. & Adm.News, '67, p. 983.

Albert W. Zimmermann, Dunbar & Dunbar, Indianapolis, Ind., for plaintiff.

Robert E. Schneider, II, Hamill & Price, Indianapolis, Ind., for defendant.

### MEMORANDUM ENTRY

HOLDER, District Judge.

The issues are presented by defendant's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure which is addressed to each of the five counts of plaintiff's complaint.

The uncontroverted evidence discloses that on June 28, 1945, the defendant executed, and on June 29, 1945, issued to the plaintiff, Mary F. Dunbar, as owner and primary beneficiary, policies of insurance numbered 1436301, 1439017, 1439018 and 1439019 insuring the life of Lucien Leander Dunbar, her husband, each of which policies was issued in the face amount of Ten Thousand Five Hundred Fifty-seven Dollars ($10,557.00).

The provisions of the policies making the plaintiff owner and primary beneficiary were prepared by Lucien L. Dunbar, the insured and plaintiff's husband, and submitted to the defendant who approved the provisions. The letterhead under which said provisions were submitted show that Mr. Dunbar was an attorney, and a member of the firm of Dunbar & Dunbar, "Specializing in Income and Inheritance Taxes, Wills and Trusts".

On September 14, 1945, the parties entered into an "Agreement of Designation of Beneficiary and Method of Settlement" with regard to policies numbered 1436301, 1439017, 1439018 and 1439019, designating the plaintiff, Mary F. Dunbar, as primary beneficiary and Sandra M. Dunbar and Lucia L. Dunbar, her daughters, as contingent beneficiaries, and electing a settlement option providing for continuous installments for twenty (20) years and for life thereafter. The foregoing contract of September 14, 1945 was entered into pursuant to Section D1. of all the policies in issue which provides:

"The owner of this policy may, by written notice to the Company * * * elect to have the proceeds payable under this policy upon the death of the insured, * * * paid in accordance with any one of the following options in lieu of in a single sum; and the beneficiary, after the death of the insured, *no prior election having been made,* may elect to receive the proceeds in accordance with any one of the following options when the said proceeds are payable in a single sum to the said beneficiary." (Emphasis supplied.)

In addition, Article VA. of the September 14, 1945 agreement provides in part as follows:

"With the consent of the Company the undersigned further reserves the right at any time after maturity to change the beneficiary or to change or revoke the method of settlement."

This additional provision in the supplemental agreement of September 14, 1945 granting the plaintiff the right to again change her election after maturity from that option referred to in the supplemental agreement with consent of the company provided the plaintiff with an

additional right she did not have under the terms of the original six (6) policies, for there was no provision in Section D1, for a change in mode of settlement after an election had been made.

On June 21, 1954, the defendant issued to the plaintiff, Mary F. Dunbar, as owner and primary beneficiary, policy of insurance numbered 2104549 insuring the life of Lucien Leander Dunbar, her husband, in the face amount of Twenty-one Thousand Seven Hundred Fifty-two Dollars ($21,752.00), said policy representing the conversion of term features of a portion of the original policies numbered 1436301, 1439017, 1439018 and 1439019.

Policy numbered 2104549 was made subject to the September 14, 1945 agreement by a written contract between the parties dated June 21, 1954, providing that any agreement of change of beneficiary or method of settlement attached to the original policies shall apply to the new policy.

On December 29, 1960, the defendant issued to the plaintiff, Mary F. Dunbar, as owner and primary beneficiary, policy of insurance numbered 2213302, insuring the life of Lucien Leander Dunbar, her husband, in the face amount of Thirty-six Thousand Twenty Dollars ($36,020.-00), said policy representing the conversion of term features of a portion of the original policy numbered 2104549.

Policy numbered 2213302 was made subject to the September 14, 1945 agreement by a written contract between the parties dated December 23, 1960, providing that any agreement of change of beneficiary or method of settlement attached to the original policies shall apply to the new policy.

The insured, Lucien Leander Dunbar, died on March 19, 1965 and the owner and beneficiary, the plaintiff herein, survived Mr. Dunbar.

The plaintiff alleges in rhetorical paragraphs 6 and 7 of all counts of her amended complaint that within the time specified in the six (6) policies of insurance, the plaintiff served on the defendant due and proper proofs of the death of the insured and that thereafter, on October 29, 1965, the plaintiff made demand upon the defendant to pay her the total amount due under said policies in one lump sum which sum the defendant has refused and continues to refuse to pay, thereby breaching the policy contracts. In rhetorical paragraph 6 of counts II and III, the plaintiff alleges that the defendant consented and agreed to pay the plaintiff the proceeds due under said policies in any form or manner acceptable to the plaintiff; and in count V, the plaintiff alleges that the defendant unreasonably withheld consent when she requested payment in a lump sum. In this connection, the facts disclose that on April 27, 1965 plaintiff delivered the policies along with death certificates to the defendant.

On May 3, 1965, the manager of the defendant company sent a letter to the plaintiff regarding the six (6) insurance policies in issue and enclosed inter-office correspondence of defendant. Said letter stated that if Mrs. Dunbar desired to take more time, that the company would appreciate hearing from plaintiff that such was the case. The inter-office correspondence, in response to an April 29, 1965 inter-office memorandum from the manager requesting information concerning any time limitation that might be involved in plaintiff's decision as to how she would like to have the proceeds distributed, reads as follows:

"Please refer to your letter of April 29, 1965.

There is a time of limitation on electing an option under a death claim. However, if all that is required is one month, it will be perfectly all right. However, if she does not elect an option at the end of one month, we advise her to put the proceeds of these 6 policies under the Accumulating Interest Account until such time that she decides on an option. However, she has 18 months to decide if she would like a Life Income Option and still receive at interest rates contained in the policy.

April 30, 1965"

On October 29, 1965, Mr. Zimmermann, attorney for the plaintiff, wrote the defendant stating that:

"On September 22, 1945, Mrs. Dunbar executed a settlement option for twenty years' guaranteed payments and life. Pursuant to the terms of this settlement agreement, found in Section V, Paragraph A, the owner of the policy retained the right at any time after maturity, with consent of the Company to change * * * settlement provisions. * * *

We have been requested by Mrs. Dunbar to inform you that she * * * hereby demands payment in a lump sum * * *."

On November 3, 1965, the defendant answered the above letter stating that under Article V, Section A, the defendant does "not consent to a single sum payment".

On November 5, 1965, Mr. Zimmermann again wrote the defendant on behalf of the plaintiff stating that:

"We agree that Article V, Section A, provides that * * * revocation of the method of settlement requires the consent of your company; but we interpret this to mean that consent will not be unreasonably withheld. We would appreciate a succinct statement as to why the consent is being withheld."

On November 11, 1965, defendant answered the above letter stating that:

"At the issuance of the original policy, the purpose of the insurance was to provide an income for the insured's family. We feel this is an indication of our insured's intention, and Mrs. Dunbar concurred by completing a beneficiary agreement on September 22, 1945 providing an income. * * * For cases similar to this one, we do not grant our consent."

At no time since the policies matured by reason of the death of Lucien L. Dunbar has defendant made investigation as to the financial needs of the plaintiff. Plaintiff's counsel admitted in argument, however, that the deceased had a substantial estate for which a federal estate tax return was filed, and which was too large for the plaintiff to handle by herself as executrix. There is no evidence in the record that plaintiff was at any time or is presently destitute or in need of money.

The total face amount payable as a result of the insured's death on the six (6) policies in issue is One Hundred Thousand Dollars ($100,000.00). Under the agreement of the parties of September 14, 1945, the plaintiff would receive under the six (6) policies monthly payments guaranteed for twenty (20) years and for her life thereafter should she survive the twenty (20) year period, but if she does not live the twenty (20) years, the contingent beneficiaries receive the balance due of the twenty (20) years guaranteed payments.

The continuous installment option provided for in the six (6) policies which the plaintiff elected by her agreement of September 14, 1945 has the effect that the plaintiff and her contingent beneficiaries may receive something less in actual payments than the One Hundred Thousand Dollars ($100,000.00) face amount of the six (6) policies, if the plaintiff does not survive for twenty (20) years. On the other hand, if the plaintiff lives a sufficient time beyond the twenty (20) year period she may receive more than the One Hundred Thousand Dollars ($100,000.00) face amount of the six (6) policies. Under plaintiff's option for continuous installments, she would receive monthly payments of Four Hundred Two Dollars and Eighty-six Cents ($402.86), amounting to the aggregate sum of Ninety-six Thousand Six Hundred Eighty-six Dollars and Forty Cents ($96,686.40) for the guaranteed twenty (20) year period.

The actuarial basis used in computing the guaranteed amounts of monthly income in policies numbered 1436301, 1439017, 1439018 and 1439019 for Settlement Option 2, Continuous Installments, is the 1937 Standard Annuity Table with the age set back six (6) years

for females, with interest at the rate of three per cent (3%) per year compounded annually. The actuarial basis used in computing the guaranteed amounts of monthly income in policies numbered 2104549 and 2213302 for Settlement Option 2, Continuous Installments, is the 1937 Standard Annuity Table with the age set back six (6) years for females, with interest at the rate of two and one-half per cent (2½%) per year compounded annually for payments involving life contingencies and at the rate of two per cent (2%) per year compounded annually for payments certain, which do not involve life contingencies. The amounts of monthly income provided by plaintiff's settlement option are as follows:

| Policy | Amount |
|--------|--------|
| 1436301 | $ 45.30 |
| 1439017 | 45.30 |
| 1439018 | 45.30 |
| 1439019 | 45.30 |
| 2104549 | 83.58 |
| 2213302 | 138.08 |
| Total | $402.86 |

The amounts of monthly income shown above were computed in accordance with the same actuarial bases as the amounts of monthly income guaranteed in said policies for such settlement options, and each represents the actuarial equivalent according to those bases of a lump sum payment equal to the proceeds of such policies at the death of the insured. In addition to the amounts above shown, installments after the first will be increased by any additional interest as may be annually determined and apportioned by the defendant, but not beyond the period of certain installments. The policy forms, including the guaranteed amounts of monthly income available under the various settlement options calculated for Option 2, Continuous Installments, on the actuarial bases described above were submitted to the Indiana Department of Insurance and were approved as conforming to the statutory and administrative requirements of the State of Indiana.

On October 27, 1965, defendant issued and delivered to plaintiff its check for Three Thousand Two Hundred Twenty-two Dollars and Eighty-eight Cents ($3,222.88) in satisfaction of its liability for monthly payments to and including October, 1965, under the policies. On November 19, 1965 and on said day for each month thereafter until December 19, 1966, defendant issued and delivered its checks payable to the plaintiff in the amount of Four Hundred Two Dollars and Eighty-six Cents ($402.86), representing continuing monthly payments under the terms of the policies. On March 31, 1966, defendant issued its check payable to the plaintiff in the amount of Seven Hundred Ninety-six Dollars and Fifty-five Cents ($796.55), representing the payment of interest in excess of that guaranteed by the terms of the policies in accordance with defendant's practice of paying excess interest when feasible on proceeds held under settlement options. None of the above mentioned checks were cashed by the plaintiff and all have been returned to the defendant. Defendant stands ready to return all of said checks to plaintiff and to continue to issue checks to the plaintiff for all payments now due and due in the future under the terms of the policies.

The plaintiff's second amended complaint is in five (5) counts and the foregoing facts are contained in all counts. Count I of the amended complaint proceeds upon the theory that the defendant has breached each of the six (6) contracts of insurance and that she has been deprived of the use of the proceeds of the six (6) policies since the death of the insured and requests judgment in the amount of One Hundred Thousand Eight Hundred Sixty-one Dollars and Eighty-six Cents ($100,861.86) plus interest at the rate of six per cent (6%) per annum from March 19, 1965, and costs of the action.

Count II of the amended complaint also proceeds on the theory of the breach by the defendant of the six (6) contracts of insurance and further alleges that her

demand for lump sum payment was made on October 29, 1965 which was refused by the defendant and she has been deprived of the use of the proceeds since that date and requests judgment in the sum of One Hundred Thousand Eight Hundred Sixty-one Dollars and Eighty-six Cents ($100,861.86), plus interest at the rate specified in the six (6) contracts of insurance from the date of the death of the insured until October 29, 1965, and interest at the rate of six per cent (6%) per annum since October 29, 1965, and costs of the action.

Count III of the amended complaint also proceeds on the theory of the breach by the defendant of the six (6) contracts of insurance and further alleges that since October 29, 1965 the defendant has wrongfully withheld the proceeds due the plaintiff pursuant to the terms of the policies and has utilized the same for its own purposes, and the plaintiff prays that a constructive trust of said proceeds be declared in her favor, that the Court require the defendant to make a proper accounting and pay over to the plaintiff One Hundred Thousand Eight Hundred Sixty-one Dollars and Eighty-six Cents ($100,861.86) plus all accretions to said amount realized by the wrongful use of said trust fund, plus interest at the rate of six per cent (6%) per annum from March 19, 1965, attorney's fees and costs of the action.

Count IV of plaintiff's amended complaint is identical in substance to count III, except that it does not pray that the Court require the defendant to make an accounting and does not allege that the defendant consented and agreed to pay the plaintiff the proceeds due under the policy in whatever form or manner acceptable to her as was alleged in counts II and III of the amended complaint.

Count V of plaintiff's second amended complaint alleges that plaintiff's demand for lump sum payment was made in a proper manner and that defendant, without making any investigation into plaintiff's financial circumstances, arbitrarily withheld consent to plaintiff's disadvantage, thereby refusing to pay the equivalent of the One Hundred Thousand Dollars ($100,000.00) face amount of the policies and in such manner breached the contracts, wherefore, plaintiff prays for judgment in the amount of One Hundred Thousand Eight Hundred Sixty-one Dollars and Eighty-six Cents ($100,861.-86), interest at the rate of six per cent (6%) per annum from March 19, 1965, costs of the action and all other proper relief.

Upon the foregoing facts, the Court has jurisdiction of the parties and the subject matter of the action.

■ The Court must conclude that the plaintiff has no right under the terms of the policies to elect a lump sum payment, subsequent to the maturity of the policies, without the consent of the defendant company.

Section A1. by reference to Section D1. of the original six (6) policies of insurance gave the plaintiff the right to elect a settlement option before or after maturity of the policy. The plaintiff made such an election on September 14, 1945. Section D1. of the policies gives the plaintiff (beneficiary) the right to elect other options after the death of the insured when no prior election has been made. Plaintiff had made a prior election, and, therefore, her right to effect any further change therein was dependent upon the consent of the company under the September 14, 1945 agreement between the parties, which consent was withheld by the defendant.

■ Plaintiff contends, however, that she has the right under the ownership provisions of the policies to make another election as owner of the policies. The provisions making plaintiff owner of the policies were drafted and inserted in the policies by her husband, the insured, a skilled attorney and estate planner, for the obvious purpose of preventing the inclusion of said policies in his estate, so that there would be no estate tax liability to the plaintiff. The rights under the insurance policies, however, were fixed at the time of their maturity, the death of the insured, and her rights

under the policies at that time were exercisable as beneficiary and not as owner. Plaintiff made her election as owner on September 14, 1945 under the supervision of her providing husband obviously with a view to protecting his wife after his death. Any change therein to be made after the maturity of the policies must be made by the plaintiff, as beneficiary, with the consent of the defendant company.

The settlement provision elected by the plaintiff is not void.

Burns Indiana Statutes Annotated Section 39–4207 provides:

> "No ·policy of life insurance shall hereafter be issued * * * if it contain any of the following provisions:
>
> * * * * * *
>
> (3) That in the event of the maturity of any policy * * *, for any mode of settlement at maturity of less value according to the company's published rates therefor then in use, than the amount insured under the policy, plus dividend additions, if any, less any indebtedness to the company on account of or secured by the policy and less any premium that may, by the terms of the policy, be deducted."

■ The only case to interpret a similar statutory provision was Julius v. Metropolitan L. Ins. Co., 299 Ill. 343, 132 N.E. 435, 17 A.L.R. 956 (1921). There the Court interpreted the provision to mean that "the total *value* of the installments must not be less than the *sum* specified in the insurance contract as payable at the maturity of the policy". (emphasis supplied.) If the legislature had meant that the minimum sum should not be less than the sum specified, it could have clearly said so. It can only be concluded, therefore, that the intent of the provision is that the "value" must not be less than the "amount" specified, or in other words it must be at least the actuarial equivalent of the amount insured on the face of the policy. The evidence, uncontroverted by the plaintiff, shows that the settlement option selected by the plaintiff does constitute the actuarial equivalent of the amount insured. In addition, the basis· for such settlement options has been approved by the Indiana Department of Insurance. Under the settlement option in question, the plaintiff stands to receive in excess of the face value of the policies if she lives beyond twenty (20) years, and the amount will be increased by the excess interest declared from time to time by the defendant.

■ Defendant did not waive its right under the policies to withhold consent to plaintiff's election of a lump sum settlement after maturity of the policies.

The correspondence between the parties subsequent to the death of the insured denies plaintiff's contention that the defendant agreed to pay the plaintiff the proceeds due under the policies in any form acceptable to the plaintiff. Although defendant inquired of plaintiff as to whether she desired to effect a change in the mode of settlement, it at no time indicated that such a change would not require the consent of the company. At no time did the defendant mention lump sum settlement or that it would be agreeable to such a settlement. The actions of defendant in no way constituted a waiver of its rights under the policies and the September 14, 1945 agreement.

■ The September 14, 1945 agreement between the parties is binding on the parties and does not lack consideration. This agreement merely constituted the exercise of plaintiff's right of election under the terms of the original policies which is supported by the element of consideration. The agreement itself conferred an additional benefit upon the plaintiff, for the original policies did not provide for a change in mode of settlement after an election had been made, whereas under the September 14, 1945 agreement, such a change could be affected with the consent of the company.

■ Defendant's refusal to consent to plaintiff's election, subsequent to matur-

ity of the policies, to a lump sum settlement was a valid exercise of its right, under the policies and was not unreasonable.

Plaintiff also alleges a cause of action, especially in her fifth (5th) count of complaint, upon the doctrine of "substantial compliance". The doctrine is essentially that even though a policy provides that a change of beneficiary may be effected only with the consent of the insurer, a change of beneficiary is effective without such consent where all the other requirements as to a change of beneficiary have been substantially complied with. This rule is based upon the ground that the insurer cannot capriciously withhold its consent to a change of beneficiary requested by the insured. 19 A.L.R.2d 15. Plaintiff has cited no cases where this doctrine has been applied to the election of settlement options, and the Court has found none. Even if applicable, the doctrine would not apply here, for it requires a flat refusal to perform on the part of the insurer, " * * * for reasons having no relation to its own security, or indeed to its own business". In re Greenberg, 271 F. 258, 20 A.L.R. 253 (2 Cir. 1921). Similarly, the change of beneficiary case cited by the plaintiff, Rindlaub v. Travelers Insurance Co., 119 Ohio App. 77, 196 N.E.2d 602 (1962), held that the " * * * company could not defeat the insured's right by simply failing to act. Where the insured has appropriately ordered the change, the company may prevent the change only if it has a sufficient reason related to its commercial interest, and has affirmatively invoked the condition." There is no question here that the defendant affirmatively invoked its failure to consent within a matter of a few days after it first received notice of plaintiff's desire for a lump sum payment. Also, as plaintiff vigorously points out, defendant's refusal was certainly related to its commercial interest, for defendant could earn money on the fund if left with the company rather than being paid out in a lump sum. The consent provision was a term of the agreements arrived at by the parties, and the defendant was under no legal compulsion to grant such consent. The fact that the defendant conducted no investigation of plaintiff's financial needs before deciding to withhold consent is not material. The burden is upon the plaintiff to offer some evidence in a Summary Judgment Proceeding under Rule 56 of the Federal Rules of Civil Procedure to disclose wherein such a failure to investigate would be material. In addition, it is clear that the defendant had no legal obligation under the policies to make such an investigation, and its right to grant or withhold consent was in no way conditioned upon such an obligation. Moreover, there is also an element here of the defendant company respecting the obvious intent of the insured, an intention concurred in by the plaintiff on September 14, 1945, that the plaintiff should be provided for in this manner after his death.

The defendant is entitled to Summary Judgment as a matter of law, for the pleadings, admissions on file and affidavits show that there is no genuine issue as to any material fact.

It is therefore ordered and adjudged that defendant's Motion for Summary Judgment is granted, and judgment is rendered for the defendant and against the plaintiff upon the issues of each of the five (5) counts of the complaint, costs versus the plaintiff.

It is further ordered that defendant's Motion to Strike Count V is hereby rendered moot.