Mary F. DUNBAR, Plaintiff-Appellant,

v.

The UNION CENTRAL LIFE INSURANCE COMPANY, Defendant-Appellee.

No. 17144.

United States Court of Appeals
Seventh Circuit.

May 16, 1969.

Thomas Clay Collier, Jr., Albert W. Zimmermann, Indianapolis, Ind., Dunbar, Collier & Zimmermann, Indianapolis, Ind., of counsel, for appellant.

Ralph Hamill, John P. Price, Indianapolis, Ind., Hamill & Price, Indianapolis, Ind., of counsel, for appellee.

Before KILEY, FAIRCHILD and KERNER, Circuit Judges.

KILEY, Circuit Judge.

The district court entered summary judgment against plaintiff in her suit to recover lump sum settlements of insurance policies on her husband's life in lieu of a monthly settlement option she had chosen prior to her husband's death. 283 F.Supp. 823. We affirm.

At the time of her husband's death, March 19, 1965, the total amount due under six policies issued by defendant covering decedent was $100,861.86. The several policies were issued to plaintiff as owner and in each she was named primary beneficiary. Each policy was subject to an "Agreement of Designation of Beneficiary and Method of Settlement" made September 14, 1945, which elected a settlement option providing for continuous monthly payments of $402.86 to plaintiff guaranteed for twenty years and for life thereafter.[1]

Plaintiff alleged in substance that she had timely performed all of her policy obligations; that defendant refused to pay, in accordance with her demand, the total face value, contrary to the express terms of the contract; and that defendant's withholding its "consent" to election of the lump sum provision of the insurance contracts was arbitrary and in disregard of plaintiff's interest. The district court entered summary judgment for defendant on the ground that "plaintiff ha[d] no right * * * to elect a lump sum payment, subsequent to maturity of the policies, without * * * consent of * * * defendant."

Plaintiff's affidavits justify the following statement of facts: After her husband died on March 19, 1965, plaintiff, being uncertain as to her cash needs, did not immediately answer the repeated requests of the Company that she elect a mode of payment of the proceeds of the policies. On May 3, about six weeks after her husband's death, the Company wrote plaintiff's lawyer enclosing an inter-office memorandum to the effect that plaintiff had eighteen months to decide whether she would like a life income option. Plaintiff relied on the eighteen months representation and did not demand the lump sum settlement until October 29, 1965. On November 3, 1965, the Company refused the demand, stating that her election required the consent which they refused to give.

Plaintiff argues that the foregoing post-maturity events "tacitly" admit her right to change the mode of payment and that the Company is estopped from withholding consent; that the withholding of consent was arbitrary and invalid; and that Indiana law prohibited the Company from changing its tacit position by failing, within two months after proof of death was submitted, to settle the claim.

We see no merit in the last argument. The delay was due primarily to plaintiff's uncertainty, and in the Company's view it settled plaintiff's claim by rejecting plaintiff's demand of October 29, 1965 in the next month after insured's death.

Under Sec. D1 of each policy, the "owner" could by written notice, *before or after* insured's death, elect to have the proceeds paid according to any of several installment options instead of in a single sum. The beneficiary, "no prior election having been made," could after insured's death elect any one of the installment options instead of a single sum payment. The September, 1945 agreement which—under stipulation in subsequently issued policies—covered the

---

1. Contingent beneficiaries, two daughters at the time of insured's death, under the agreement were to receive the balance
due of the guaranteed payments should plaintiff not survive the twenty years.

six policies in issue, provided that "with consent of the Company" plaintiff at any time *after* maturity could "change or revoke the method of settlement."

The district court rejected the contention that plaintiff, as owner of the policy, did not need the Company's consent to change her rights as beneficiary. The policies expressly provided that plaintiff was to have express ownership rights "during her lifetime," [2] and expressly provided that the insured was not owner and had no ownership rights. The 1945 agreement, however, reserved to plaintiff the right as owner to change the settlement option *before* maturity. This agreement also provided that plaintiff reserved the right *after* maturity to change or revoke the method of settlement "with * * * consent of the Company." This modified the owner's right "before or after" insured's death.

■ It is our view that plaintiff's rights as beneficiary vested upon the insured's death. Her rights as owner at that time ceased. This is consistent with the 1945 settlement agreement provisions, which reserved *before* maturity her ownership rights in the policies, and *after* maturity limited her right to change or revoke the method of settlement by requiring consent.

■ After an examination of the record before us, we hold there is no genuine issue of fact concerning the claim that the Company arbitrarily withheld its consent.

The district court noted that the provisions of the policies making plaintiff the owner were prepared by the insured. The letterhead under which the ownership provisions were submitted shows that the insured, Mr. Dunbar, was an attorney and a member of the firm of Dunbar & Dunbar "Specializing in Income and Inheritance Taxes, Wills and Trusts." It is apparent to us that the life insurance program was carried out at the direction of the insured. The September 22, 1945 agreement electing a monthly settlement option was signed by plaintiff. Presumably it was with her husband's acquiescence, in view of the fact that it was executed a few months after the policies became effective. This jointly-declared intention to provide plaintiff with a guaranteed income for life was done for her financial security. The agreement provided for continuous installments and expressly withheld from plaintiff the right to withdraw funds from the insurance proceeds retained as principal by the defendant. Violence would be done to this plan if the option could be changed merely because the beneficiary has so requested. Plaintiff has neither alleged nor brought forth any extraordinary facts to justify a change in the pattern of financial security designed by both her and her husband.[3]

■ Finally, we see no merit in plaintiff's claim that the policy option for monthly installments elected prior to her husband's death violated Burns' Ind.Stat. Ann. Sec. 39–4207 (1965 Repl.), because "at maturity" the settlement could be of less value than the "amount insured" in the policies. The affidavit of defendant's chief actuary shows that the value of the "guaranteed" monthly installments was the equivalent of the amounts insured, and this settlement option was approved by the State of Indiana Insurance Department. There was no genuine issue of fact about this point.

For the reasons given, the judgment is affirmed.

---

2. "OWNERSHIP. Mary F. Dunbar, wife of the insured, during her lifetime, may exercise every right and receive every benefit specified in and conferred by the provisions of the policy to the owner thereof, including, but without limiting the foregoing, the right of assignment, the privilege to change the beneficiary * * * and to agree with the Company to any change in or amendment of the policy, all without the consent of the insured."

3. We do not decide or imply the extent, if any, of the insured's control over the incidents of ownership in the policies.